IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **CLYDE PETERSON,** *et al.*, | * |
| Plaintiffs, | * |
| v. | * Case No.: PWG-16-1947 |
| **PRINCE GEORGE'S COUNTY,** *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Clyde Peterson and Derrick Simmons allege that their Fourth Amendment rights were violated when Defendant Officer David Gross shot them while they occupied a parked vehicle. They seek redress pursuant to 42 U.S.C. § 1983. Pending is Officer Gross's Motion for Summary Judgment.[1] ECF No. 40. I find that Officer Gross acted reasonably, and therefore, no constitutional violation occurred. Accordingly, I will grant Officer Gross's Motion. And, consequently, I will dismiss the *Monell*[2] claim against Defendant Prince George's County (the "County").

## Background

On June 9, 2015, a supervisor sent Officer Gross and Corporal Fu Cheung (formerly a defendant but now dismissed) to a shopping mall parking lot in unmarked vehicles in search of a black Ford Mustang that had been reported stolen. Gross Dep. 32:6-14, ECF No. 42-1; *see also*

---

[1] The parties fully briefed the motion. ECF Nos. 40-1, 41, 41-1, 42. A hearing is not necessary. *See* Loc. R. 105.6.

[2] *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978).

Cheung Dep. 16:11-21, 18:3-17, ECF No. 42-2. Corporal Cheung identified the Mustang and attempted to observe whether anyone was inside. Cheung Dep. 18:20–19:4. He observed one person in the driver's seat upon his initial pass. *Id*.; Gross Dep. 34:7-10.

Officer Gross, Corporal Cheung, and Detective Dichoso (all of whom were communicating via radio) decided that the car would be remotely disabled and Officer Gross would use his unmarked vehicle to conduct a tactical maneuver known as a "pinch" to block the driver's side of the vehicle and to force the occupant[3] to exit on the passenger side, where Corporal Cheung would apprehend him. Gross Dep. 38:8–39:19, 51:4-17; Cheung Dep. 22:11-22; Pls.' Opp'n Mem. 2. According to Officer Gross, after a pinch is executed, "most people will either do one of two things in a situation like that; they will comply or they'll run, fight or flight . . . In this particular thing you're going to figure out which one, and that's going to be really fast." Gross Dep. 51:4-17. After completing the maneuver, Officer Gross exited his vehicle and approached Plaintiffs' vehicle, crossing the front of the Mustang to the passenger side. *Id*. 53:1-7; *see also* Pls.' Opp'n Mem. 2.

As Officer Gross moved around the Mustang, he "g[ot] to a point where [he saw] the driver, after he pushe[d] on the driver's door, lift his butt off the seat and reach down and pull a handgun out and [the officer was] able to look into the car and see the handgun." Gross Dep. 53:13-54:2, 62:17-19, 64:1-3. Simmons, who was sitting in the driver's seat of the Mustang, acknowledged that he had a weapon in the front right pocket of his pants. Simmons Dep. 2d Excerpt 40:6-20, ECF No. 42-6. Officer Gross issued multiple warnings to "drop the gun," and the car began to shake as Plaintiffs moved inside it. Gross Dep. 64:20–65:3, 10-12, 67:1-14; Simmons Dep. 35:24–36:2; Peterson Dep. 19:2-3, ECF No. 42-4. Plaintiffs agree that Officer

---

[3] The officers were unaware at the time that Peterson was present.

Gross yelled "gun" as he approached the passenger side of the Mustang. Simmons Dep. 35:24–36:2, ECF No. 42-3; Peterson Dep. 19:2-3. At his deposition, Officer Gross stated:

> And then I remember thinking, like, they're not complying and that I'm in fear for my life. "I'm going to get into a gunfight with these guys." At that point, I abandoned the door and I started working backwards away from the passenger door . . . I realized that these two armed individuals were going to get out of the passenger side. I had no cover, I had nothing to go to, and I felt lethal force at that point was my only option.

Gross Dep. 68:1-6, 69:7-11. As Officer Gross backed away, he shot into the vehicle, striking Peterson (who was in the backseat) once and Simmons multiple times. Def.'s Mem. 2; Pls.' Opp'n Mem. 2. Corporal Cheung, who had been in another location in the parking lot, arrived after Officer Gross began discharging his weapon. Cheung Dep. 26:4-10. Simmons was dragged from the car, the weapon fell out of his pocket, and he was "laying on it" on the ground. *Id*. 41:11–42:3. Simmons testified that he learned after the incident that Peterson was armed. Simmons Dep. 31:24–32:8; *see also* Cheung Dep. 37:17–38:13 (stating the individual in the backseat was found to have a weapon in his pocket).

On June 8, 2016, Peterson and Simmons filed suit against Officer Gross, the County, and Corporal Cheung. Compl., ECF No. 1. On June 21, 2017, I denied Defendants' motion to dismiss and bifurcated the *Monell* claim against the County, pending the resolution of the claims against Officer Gross. ECF No. 23. The claims against Corporal Cheung were voluntarily dismissed with prejudice. *See* Ltr. Order, ECF No. 37. Officer Gross now moves for summary judgment, arguing that there are no genuine disputes of material fact and that he is entitled to qualified immunity. Def.'s Mot.

## **Standard of Review**

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see also Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create "fair doubt." *Cox v. Cty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). The substantive law governing the case determines what is material. *See Hooven–Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A fact that is not of consequence to the case, or is not relevant in light of the governing law, is not material. *Id.*; *see also* Fed. R. Evid. 401 (defining relevance).

## Discussion

### *§ 1983 Claim (Count I) – Qualified Immunity and Excessive Force*

Qualified immunity "protects law enforcement agents from federal claims when they act in objectively reasonable reliance on existing law." *Queen v. Prince George's Cty.*, 188 F. Supp. 3d 535, 541 (D. Md. 2016) (quoting *Rockwell v. Mayor & City Council of Baltimore*, No. RDB-13-3049, 2014 WL 949859, at *8 n.10 (D. Md. Mar. 11, 2014)). It "balances two important

interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "In particular, . . . qualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).

Pursuant to this doctrine, police officers are not liable under § 1983 unless "(1) the allegations, if true, substantiate a violation of a federal statutory or constitutional right and (2) the right was 'clearly established' such that a reasonable person would have known his acts or omissions violated that right." *Streater v. Wilson*, 565 Fed. App'x 208, 210 (4th Cir. 2014) (quoting *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) (internal citations omitted)). The Court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. The defendant carries the burden of proving qualified immunity. *McDonnell v. Hewitt–Angleberger*, No. WMN-11-3284, 2013 WL 4852308, at *3 (D. Md. Sept. 9, 2013) (quoting *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013)).

Notably, "*Graham v. Connor*, [490 U.S. 386 (1989)], clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001), *receded from on other grounds by Pearson*, 555 U.S. 223. Therefore, when, as here, the plaintiffs "allege[] that a police officer has unconstitutionally used deadly force, the officer's actions are

5

judged on a standard of objective reasonableness." *Sigman v. Town of Chapel Hill*, 161 F.3d 782, 786 (4th Cir. 1998) (citing *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). The Court

> consider[s] what a "reasonable officer on the scene" would have done, taking into account such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." This evaluation is guided by the pragmatic considerations of the moment and not by those that can be hypothesized from an armchair. Thus,
>> [t]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight....The calculus of reasonableness must embody allowances for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* at 787 (quoting *Graham*, 490 U.S. at 396–97). Relevantly, the Fourth Circuit "has consistently held that an officer does not have to wait until a gun is pointed at the officer before the officer is entitled to take action." *Anderson v. Russell*, 247 F.3d 125, 131 (4th Cir. 2001). Indeed, "a police officer need not, in all circumstances, 'actually detect the presence of an object in a suspect's hands before firing on him.'" *Sigman*, 161 F.3d at 788 (quoting *McLenagan v. Karnes,* 27 F.3d 1002, 1007 (4th Cir. 1994)). In *Sigman*, the Fourth Circuit held:

> Where an officer is faced with a split-second decision in the context of a volatile atmosphere about how to restrain a suspect who is dangerous, who has been recently—and potentially still is—armed, and who is coming towards the officer despite officers' commands to halt, we conclude that the officer's decision to fire is not unreasonable. Accordingly, we reject the argument that a factual dispute about whether Sigman still had his knife at the moment of shooting is material to the question of whether Officer Riddle is entitled to the protections of qualified immunity in the particular circumstances of this case.

*Sigman*, 161 F.3d at 788. Additionally, "minor discrepancies in testimony do not create a material issue of fact in an excessive force claim, particularly when . . . the witness views the event from a worse vantage point than that of the officers." *Anderson*, 247 F.3d at 131.

In the context of qualified immunity, the objective reasonableness inquiry "has a further dimension" than a simple excessive force analysis because

> [i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Saucier*, 533 U.S. at 205. As a result, "qualified immunity affords government officials greater protection than a simple defense on the merits," as "[a] police officer should prevail on an assertion of qualified immunity if a reasonable officer possessing the same information *could* have believed that his conduct was lawful." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991).

In reviewing the evidence before me, it is clear that Officer Gross and Corporal Cheung arrived on the scene having been directed to search for a vehicle that they reasonably believed to be stolen. Gross Dep. 32:6-14. Motor vehicle theft is a serious crime. Md. Code Ann., Crim. Law § 7-105 (defining motor vehicle theft as a felony punishable by up to five years' imprisonment). The pinch maneuver they decided to employ only secured one side of the vehicle, and Officer Gross knew that the vehicle's occupants (who could be upset because their vehicle had just been hit by an unmarked vehicle[4]) would either "comply" or "run, fight or flight," and he had "to figure out which one, and that's going to be really fast." *See* Gross Dep. 39:11-19, 51:4-17.

After completing the pinch, Officer Gross exited his vehicle and went to the passenger's side of the Mustang, where he saw a firearm through the window. *Id.* 62:17-19, 64:1-3. At that time, he issued a warning for Plaintiffs to "drop the gun"; however Plaintiffs did not comply and

---

[4] Although a driver is not supposed to come in contact with the target vehicle when executing a pinch, Officer Gross testified that he hit the Mustang with his vehicle. A dispute exists regarding whether Officer Gross activated the lights on top of his vehicle before hitting the Mustang.

7

the vehicle began "shaking" as Plaintiffs moved around inside and at least one individual attempted to exit the vehicle. *Id*. 64:20–65:3, 10-12, 67:1-14; Simmons Dep. 35:24–36:2; Peterson Dep. 19:2-3. And, as Officer Gross moved around the car he realized that he was confronted by two individuals, not one, who were armed and not complying with his orders. It is not material whether either one actually drew his gun. *See Anderson*, 247 F.3d at 131.

Officer Gross observed that Simmons "was literally pulling the handgun out and he wasn't complying." Gross Dep. 59:13-14. Officer Gross was "in fear for [his] life" and thought he was "going to get into a gunfight with these guys." *Id.* 68:1-6. He "realized that these two armed individuals were going to get out of the passenger side" and he "had no cover, . . . had nothing to go to, and . . . felt lethal force at that point was [his] only option." *Id.* 69:7-11. Thus, as these undisputed facts indicate, Officer Gross was faced with a rapidly developing and volatile situation that was the result of him having been called to the scene in pursuit of a stolen vehicle, which easily could have fled if not prevented from doing so. The reasonableness of his actions must not be judged with hindsight, but in light of how a reasonable officer would have reacted at that time based on what he then knew. *Sigman*, 161 F.3d at 787 (citing *Graham*, 490 U.S. 396–97).

As in *Sigman*, Plaintiffs were suspected of being involved in a serious crime and were "pos[ing] an immediate threat to the safety of the officers or others," and Officer Gross perceived that Plaintiffs were "actively resisting arrest or attempting to evade arrest by flight." 161 F.3d at 787 (internal citations omitted). As Officer Gross testified, the situation turned from "bad to worse," as he was in the open, exposed, and facing armed individuals who were not complying with orders to drop the gun. And there is no dispute that he believed at that time that he saw a gun (correctly as it turned out); both Plaintiffs agree that he shouted "gun" before he began to

8

fire his weapon. Given these undisputed circumstances, I find that Officer Gross acted reasonably when he discharged his firearm into Plaintiffs vehicle.

Moreover, the Fourth Circuit consistently has held that the testimony of a law enforcement officer that is not contradicted with regard to the material facts, is sufficient to establish the objective reasonableness of the officer's use of deadly force, even when there are minor discrepancies in the testimony, including with regard to whether the person whom the officer shot had a weapon and how that person responded to the officer's commands. *See Anderson*, 247 F.3d at 130; *Loney v. Miles*, 213 F.3d 631, 2000 WL 530319 (4th Cir. May 3, 2000) (Table); *Sigman*, 161 F.3d 782. Here, Officer Gross's testimony that he repeatedly yelled "Drop the gun" and Plaintiffs did not comply is undisputed with regard to material facts. Gross Dep. 67:12-14. Indeed, Plaintiffs' testimony that they both heard Officer Gross yell "gun," Simmons Dep. 36:1-2; Peterson Dep. 18:12-13, 19:18-20, actually supports Officer Gross's statement that he saw a gun in the vehicle. And, Officer Cheung's testimony confirms Officer Gross's explanation of why the pinch maneuver was employed. Thus, it is undisputed that Officer Gross reasonably believed there was at least one firearm in the vehicle. Minor discrepancies in the evidence, such as whether Officer Gross activated the lights on his unmarked vehicle, are inconsequential. *See Sigman*, 161 F.3d at 787 ("But '[i]t will nearly always be the case that witnesses . . . differ over what occurred. That inevitable confusion, however, need not signify a difference of triable fact. What matters is whether the officers acted reasonably upon there ports *available to them* and whether *they* undertook an objectively reasonable investigation with respect to that information in light of the exigent circumstances *they faced.*'") (emphasis in original) (quoting *Gooden v. Howard Cty.*, 954 F.2d 960, 965 (4th Cir. 1992) (en banc)). Officer Gross acted reasonably in light of the circumstances

he faced when he justifiably believed he was confronted by individuals who were armed and non-compliant and that he was exposed, vulnerable, and about to be engaged in a gunfight. The discharge of his weapon was objectively reasonable.

Because Officer Gross's use of force was reasonable and not excessive, it did not violate the Fourth Amendment. *See Anderson v. Russell*, 247 F.3d 125, 132 (4th Cir. 2001) (holding that the officer was immune from § 1983 liability because the "evidence conclusively establishe[d] that [the officer] reasonably perceived" the Plaintiff was armed and that a "split-second decision to use deadly force against [the plaintiff] was *reasonable* in light of [the officer's] *well-founded*, though mistaken, belief that [the plaintiff] was reaching for a handgun. Thus, [the officer's] use of force does not constitute a Fourth Amendment violation.") (emphasis added) (citing *McLenagan v. Karnes,* 27 F.3d 1002, 1008 (4th Cir. 1994)); *see also Hensley on Behalf of N.C. v. Price,* 876 F.3d 573, 582 (4th Cir. 2007). Therefore, qualified immunity applies. Officer Gross is entitled to judgment as a matter of law on the § 1983 claim against him (Count I).

### *Simmons's State Law Claims (Counts III, IV and V)*

Plaintiffs have conceded that if I find Officer Gross's use of force reasonable and not excessive, Simmons will be unable to proceed with his state law claims for assault and battery. Pls.' Opp'n 9. As I have found Officer Gross's use of force reasonable and not excessive, I find that Simmons has conceded his claims for assault and battery. And, Plaintiffs abandon Simmons's intentional infliction of emotional distress claim. *Id.* Officer Gross is entitled to judgment as a matter of law on these claims as well.

### *Monell* Claim against Prince George's County (Count II)

A *Monell* claim is a form of § 1983 action under which a municipality, such as the County, is liable "where a policymaker officially promulgates or sanctions an unconstitutional law, or where the municipality is deliberately indifferent to the development of an unconstitutional custom." *Smith v. Ray*, 409 F. App'x 641, 651 (4th Cir. 2011). The municipality is only liable under *Monell* if, pursuant to a municipal policy or custom, a municipal employee took unconstitutional action. *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984); *Walker v. Prince George's Cty., Md.*, 575 F.3d 426, 431 (4th Cir. 2009) Because Officer Gross's actions were not a constitutional violation, Plaintiffs will be unable to establish liability against the County. *See Smith*, 409 F. App'x at 651; *Milligan*, 743 F.2d at 229; *Walker*, 575 F.3d at 431. Therefore, Plaintiffs' *Monell* claim will also be dismissed at this time.

### **Conclusion**

In sum, no genuine disputes of material fact preclude me from granting summary judgment in favor of Officer Gross, and his Motion therefore is granted. Judgment is entered in his favor on all claims against him. Plaintiffs' *Monell* claim against the County is dismissed with prejudice based on my findings that Officer Gross's use of force did not violate the Fourth Amendment, such that he is entitled to summary judgment on Plaintiffs' § 1983 claim.

A separate order shall be entered in accordance with this Memorandum Opinion.

Dated: January 19, 2018             /S/
                                    Paul W. Grimm
                                    United States District Judge

jml